## A10A0583. FLORES v. KEENER.
(690 SE2d 903)

ELLINGTON, Judge.

In Martin Garcia's claim for workers' compensation benefits, Garcia was represented first by Russell Keener and then by Jorge Flores. After Garcia and his employer reached a settlement, Flores filed a motion seeking the entire amount allotted in the settlement for attorney fees. After a hearing, an administrative law judge largely rejected Flores' motion and ruled that Flores should receive only 1.2 percent of the attorney fee allotment while Keener should receive the remaining 98.8 percent. On appeal to the Board's Appellate Division, the Appellate Division vacated the ALJ's decision and ruled that Flores was entitled to 30 percent of the total attorney fees while Keener was entitled to 70 percent. On appeal to the Superior Court of Bartow County, the superior court vacated the Appellate Division's ruling, based on its conclusion that the Appellate Division failed to apply the correct legal standard, and remanded. We granted Flores' application for a discretionary appeal. Flores contends, inter alia, that the legal standard which the superior court instructed the

Appellate Division to apply is incorrect. For the reasons explained below, we reverse the superior court's ruling and reinstate the Appellate Division's award.

In an appeal from an order of a superior court reviewing an award of the Appellate Division of the State Board of Workers' Compensation,

> this Court examines the record to see if there is competent evidence to support the award and construes the evidence in a light most favorable to the prevailing party. . . . Further, it is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this [C]ourt has any authority to substitute itself as a fact finding body in lieu of the [B]oard.

(Citations and punctuation omitted.) *Keystone Automotive v. Hall*, 292 Ga. App. 645, 647-648 (1) (665 SE2d 392) (2008).[1] "The question of whether the [superior] court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de novo." (Citation and punctuation omitted.) Id. at 647 (1).

The record shows the following undisputed facts. Garcia was catastrophically injured on January 22, 2005, and hired Keener on October 14, 2005 to represent him in his workers' compensation claim. In the contingent fee contract, Garcia agreed to pay Keener 25 percent "of any recovery" or, in the event Garcia dismissed Keener, a fee "based upon time devoted to [Garcia's] case at [a] reasonabl[e] hourly rate" or 25 percent "of any offers which have been made by any adversary or collateral party, whichever is greater." After 20 months of litigation that included two mediations, a rehabilitation conference, and creation of a life care plan, Garcia's employer offered to settle his claim for a lump sum payment of $650,000 (plus the amount required to be set aside for Medicare[2]). Garcia rejected the offer and, on June 14, 2007, dismissed Keener. Keener filed a lien for

---

[1] The findings made by the members [of the Board] within their powers shall, in the absence of fraud, be conclusive; but upon such hearing the [superior] court shall set aside the decision if it is found that:
(1) The members acted without or in excess of their powers;
(2) The decision was procured by fraud;
(3) The facts found by the members do not support the decision;
(4) There is not sufficient competent evidence in the record to warrant the members making the decision; or
(5) The decision is contrary to law.
OCGA § 34-9-105 (c).

[2] See James B. Hiers, Jr. et al., *Georgia Workers' Compensation Law & Practice*, § 30-7 (5th ed.) (explaining Medicare set asides).

his legal fee in the amount of $162,500 (25 percent of the settlement offer of $650,000), plus accrued expenses.

The same day that Garcia dismissed Keener, he hired Flores. In the contingent fee contract, Garcia agreed to pay Flores 25 percent "of any monetary recovery payable to me under the Workers' Compensation Act, whether already accrued or to be accrued in the future." Eight days after hiring Flores, Garcia accepted his employer's modified settlement offer of $657,500 (plus the Medicare set aside). The parties stipulated, "The correct amount for attorney[ ] fees is 25 [percent] of the settlement amount, or $162,875.00. The parties hereby agree for this attorney fee to be held in escrow until the attorney fee lien is resolved."

In Flores' motion that triggered the hearing on the distribution of the attorney fees, Flores asked that the Board deny Keener's lien. The ALJ determined that Keener's contingent fee contract was valid under the Workers' Compensation Act and that a 25 percent fee was reasonable under the circumstances. The ALJ noted that Keener represented Garcia for 20 months and obtained a settlement offer of $650,000 while Flores represented Garcia for eight days and was able to increase the offer by only $7,500. The ALJ determined that a reasonable apportionment of the total fee of $162,875 was 98.8 percent for Keener and 1.2 percent for Flores. Accordingly, the ALJ directed Garcia's employer to pay Keener $160,920.50 and to pay Flores $1,954.50.

After weighing the evidence in the trial record and assessing the credibility of the witnesses who testified before the ALJ, the Appellate Division found that the ALJ's determination of the relative values of the attorneys' services was not supported by a preponderance of competent and credible evidence in the record. Based on the entire record, including Keener's testimony regarding his hourly rate of $225 per hour and the amount of work expended on Garcia's case, the Appellate Division determined that the value of Keener's services was $114,012.50, which represents 70 percent of the allotted attorney fees. Based on the fact that Flores achieved the settlement of $657,500 despite representing Garcia for only eight days, the Appellate Division determined that the value of his services was $48,862.50, which represents 30 percent of the allotted attorney fees. Subsequently, the superior court determined that the Appellate Division "applied a narrow one-sided view of the standard of quantum meruit" and disregarded certain precedents. The superior court vacated the Appellate Division's judgment and remanded with direction that the Appellate Division "apply the correct law."

Under the Act, the attorney fee a workers' compensation claimant will pay his or her attorney(s), if more than $100, is always

subject to the approval of the Board. OCGA § 34-9-108 (a).[3] In addition, the Board shall not approve any fee in excess of 25 percent of the claimant's award or settlement. Id.[4] As we have noted, OCGA § 34-9-108 (a) provides for awards of attorney fees that are "reasonable" in light of evidence of the value of the services rendered but does not otherwise dictate the manner in which the amount of an award of attorney fees is determined. *Copelan v. Burrell*, 174 Ga. App. 63, 65 (2) (329 SE2d 174) (1985). The Board is vested with the discretion to determine whether the amount of fees claimed by an attorney under an engagement contract is reasonable in light of evidence of the value of services rendered in the particular case. Id. In most cases, the Board considers the amount due under the terms of an express contract between an attorney and a workers' compensation claimant to provide prima facie proof of the value of the services rendered. *Atlas Automotive v. Wilson*, 225 Ga. App. 631, 635 (3) (484 SE2d 669) (1997).[5]

Under the standard of review to be employed by the Appellate Division, it is authorized to weigh the evidence in the trial record and to assess the credibility of the witnesses who testified before the ALJ.[6] Under that standard, the Appellate Division is authorized to substitute its own findings for those of the ALJ and enter an award thereon, if it finds that the ALJ's findings of fact are not supported by a preponderance of the credible evidence.[7] In this case, after the Appellate Division found that the ALJ's determination of the relative values of the attorneys' services[8] did not meet the Act's evidentiary standards, it was authorized to substitute its own valuation.

---

[3] "The fee of an attorney for service to a claimant in an amount of more than $100.00 shall be subject to the approval of the board, and no attorney shall be entitled to collect any fee or gratuity in excess of $100.00 without the approval of the board."

[4] See also State Board of Workers' Compensation Rule 108 (a).

[5] This rule is formalized in State Board of Workers' Compensation Rule 108 (a), which provides that any contract that provides for a fee of 25 percent of the recovery, or less, "absent compelling evidence to the contrary, shall be deemed to represent the reasonable fee of the attorney."

[6] *Bankhead Enterprises v. Beavers,* 267 Ga. 506, 507 (480 SE2d 840) (1997); *Bennett-Murray, Inc. v. Barnes,* 222 Ga. App. 137, 138-139 (1) (473 SE2d 166) (1996) (accord); see OCGA § 34-9-103 (a) ("If a timely application for review [of a decision of an administrative law judge], cross appeal, or both, is made to the appellate division, the appellate division shall review the evidence and shall then make an award with findings of fact and conclusions of law. . . . The findings of fact made by the administrative law judge in the trial division shall be accepted by the appellate division where such findings are supported by a preponderance of competent and credible evidence contained within the records.").

[7] OCGA § 34-9-103 (a); *Bankhead Enterprises v. Beavers,* 267 Ga. at 507 (If the Appellate Division concludes that an ALJ's award does not meet the statutes' evidentiary standards, it may substitute its own alternative findings for those of the ALJ and enter an award accordingly.).

[8] See *Payne v. Jones & Kolb,* 190 Ga. App. 62, 64 (3) (378 SE2d 467) (1989) (the reasonable value of services rendered by an attorney is a question of fact).

The contingent fee contracts provided prima facie proof that $162,500 (25 percent of the offer Garcia's employer made before Garcia dismissed Keener) would be a reasonable fee for Keener and that $162,875 (25 percent of the final settlement) would be a reasonable fee for Flores.[9] Because the Board was limited to distributing a total of $162,875 in fees, the Board was required to exercise its discretion to determine the relative value of the attorneys' services to Garcia.[10] The record shows that the Appellate Division considered evidence regarding Keener's typical hourly rate, the amount of time he spent pursuing Garcia's claim, and the result of his efforts, as well as the amount of time Flores spent pursuing Garcia's claim, and the result of his efforts. We conclude that the superior court erred in ruling that the Appellate Division committed a legal error in the manner in which it exercised its discretion in

---

[9] Flores contends, inter alia, that, despite the terms of Keener's contract, Keener is not entitled to any portion of the allotted fees because Garcia did not accept the settlement offer that his employer made before he dismissed Keener. See *Overman v. All Cities Transfer Co.*, 176 Ga. App. 436, 438-439 (336 SE2d 341) (1985) (Where a contingency fee agreement provided for a percentage of "all funds recovered," and where no funds were recovered during the representation because the workers' compensation claimant rejected his employer's settlement offer, the attorney did not earn the contracted fee because the contingency did not occur. As a result, the Board erred in considering, as evidence of the reasonable value of the attorney's services, the amount that would have been due under the contract if the claimant had accepted the settlement.). Under the contingency fee agreement between Garcia and Keener, however, the contingency occurred, and Keener earned his fee (subject to Board approval), when Garcia's employer made a settlement offer, regardless of whether Garcia accepted it before dismissing Keener. Under Georgia law, such provisions are generally enforceable. See *Morrow v. Stewart*, 197 Ga. App. 689 (399 SE2d 280) (1990). Flores has not identified any legal authority for his position that the Board cannot consider such a provision in a contract for legal services to a workers' compensation claimant when determining the reasonable fee the claimant's attorney can collect from the claimant under OCGA § 34-9-108 (a).

[10] See James B. Hiers, Jr. et al., *Georgia Workers' Compensation Law & Practice*, § 22-1 (5th ed.) (discussing *Overman v. All Cities Transfer Co.*, 176 Ga. App. at 436, in which the Board was required to apportion the statutory attorney fee allotment among the claimant's successive attorneys). We are mindful that, in the context of general civil litigation, a plaintiff who hires an attorney on a contingent fee basis does not have the same ability to divest the plaintiff's attorney of an earned fee by dismissing the first attorney and hiring another. In a case cited by the superior court, *Morrow v. Stewart*, 197 Ga. App. at 689, for example, a plaintiff promised to pay his first attorney, in the event of the attorney's dismissal or withdrawal, 40 percent of any settlement offers received during the representation. Id. After the defendant made a settlement offer, the plaintiff dismissed the first attorney and hired another. Id. at 689-690. In opposing the first attorney's lien against a settlement the plaintiff later accepted, the plaintiff argued that the first attorney was entitled only to receive the reasonable value of his services under the remedy of quantum meruit. Id. Because the contingency (the receipt of a settlement offer before the client dismissed the attorney) had occurred, however, the first attorney had earned his fee and was entitled to compensation as provided in the contract. Id. Because the legal fee an attorney who represents a workers' compensation claimant will collect is subject to Board approval and because a claimant can only be held responsible for legal fees up to a cap of 25 percent of the claimant's award or settlement, regardless of the claimant's hiring of successive attorneys, workers' compensation attorneys are not assured of collecting fees earned under a contract.

distributing the allotted legal fees between Garcia's attorneys. Because Flores failed in the first-tier review before the superior court to show any basis under OCGA § 34-9-105 (c) for vacating the Appellate Division's decision, we reverse the superior court's ruling and reinstate the Appellate Division's award.[11]

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

DECIDED FEBRUARY 10, 2010.

*Lawrence L. Bennett, Jr.*, for appellant.
*Akin & Tate, S. Lester Tate III, Morgan & Morgan, David H. Moskowitz, Harriss & Hartman, Joseph T. Leman*, for appellee.

---

[11] Flores contends that Keener's contract authorized the Board to award Keener no more than the product of the hours he spent on Garcia's case and his hourly rate. Because the contract provides for a fee based upon time at an hourly rate *or* 25 percent of any offers received, "*whichever is greater*," this argument lacks merit.