**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2019**

# In the Court of Appeals of Georgia

A19A0231. THE ATLANTA DEVELOPMENT AUTHORITY et al.
v. ANSLEY WALK CONDOMINIUM ASSOCIATION, INC.
et al.

REESE, Judge.

The Atlanta Development Authority d/b/a Invest Atlanta, Atlanta BeltLine, Inc., and the City of Atlanta (collectively "the Appellants") appeal the trial court's order denying their motion to dismiss an inverse condemnation and trespass action filed by Ansley Walk Condominium Association, Inc., individually and on behalf of a class of similarly situated persons (collectively "the Appellees").[1] The Appellants claim that the trial court misinterpreted the contract language found in an agreement

---

[1] The trial court granted the Appellees' motion for leave to add additional parties, Jodaco, Inc., Wayne A. Christian, and Robert. R. Smith as plaintiffs. For the purposes of this appeal, we will refer to all the plaintiffs collectively as "the Appellees."

titled "Termination of Railroad Easement" (henceforth "the Agreement"). For the reasons set forth infra, we disagree and affirm the ruling of the trial court.

Viewed in the light most favorable to the non-movant,[2] the amended complaint alleges the following facts.[3] The property at issue involves a 3.46-mile portion of the Atlanta BeltLine, formerly operated as a railroad by Norfolk Southern Railroad ("NSR"). On March 7, 2017, NSR entered into the Agreement with the Atlanta Development Authority ("ADA"). The Agreement included the following language:

> WHEREAS, NSR has obtained from the Surface Transportation Board authority to abandon any and all right and obligation pursuant to federal law to provide common carrier rail transportation in the Corridor[4] as set forth in the Decision of the Surface Transportation Board in STB Docket No. 290 (Sub-No. 210X), *Norfolk Southern Railway Company -Abandonment Exemption -in Fulton County, GA* (Service Date June 9, 2009); and
>
> WHEREAS NSR has exercised its authority to abandon its rail common carrier rights in the Corridor and has consummated the abandonment effective as of October 22, 2010, pursuant to the Notice of

---

[2] See *Kelly v. Lewis*, 221 Ga. App. 506, 507 (471 SE2d 583) (1996).

[3] The Appellants attached the Agreement as Exhibit A to the amended complaint.

[4] "Corridor" refers to several parcels of land attached as Exhibit A to the Agreement, including the property at issue.

2

Consummation of Abandonment NSR filed on that date in STB Docket No. 290 (Sub-No. 210X); and

WHEREAS, NSR has fully divested itself of all of its right, title and interest in the Corridor and any obligation pursuant to 49 USC § 10901 to provide common carrier freight transportation in the Corridor; and . . .

WHEREAS, NSR now desires to terminate its easement of right of way for all passenger and freight railroad purposes over, upon and across the Corridor [.]

The Agreement then states:

1. [Termination of Railroad Easement]. Effective as of the date hereof, the NSR Railroad Easement is hereby terminated in its entirety and shall have no further force and effect. Without limiting the foregoing, NSR by execution hereof quitclaims, remises and releases unto ADA any right, title or interest (including, without limitation, any easement rights) in, to, over, across, under, through, and upon any portion of the Corridor arising out of the NSR Railroad Easement.

2. [Miscellaneous]. This Termination shall be construed and enforced in accordance with the laws of the State of Georgia and shall be binding upon and inure to the benefit of ADA, its successors and assigns and all subsequent owners of all or any part of the Corridor formerly benefitted or encumbered by the NSR Railroad Easement.

The Appellees filed the amended complaint requesting class certification and claiming the condominium owners were adjacent landowners who owned fee title in land adjoining and within the disputed property on the date NSR abandoned its railroad-purpose easement. According to the amended complaint, the original railroad instruments granted only railroad-purpose easements; deeds and agreements show that NSR's predecessors in interest received railroad-purpose easements over the land, but the original owners of the land retained a fee simple interest in the subject property, burdened by the railroad-purpose easements. The amended complaint contends that NSR abandoned its railroad-purpose easement when it executed the Agreement on March 7, 2017, resulting in the Appellees holding fee simple title to the land, unencumbered by any railroad easement. The Appellees sought damages from the Appellants' alleged inverse condemnation and trespass, in addition to attorney fees, costs, and expenses.

The Appellants moved to dismiss the amended complaint,[5] arguing that NSR's easement transferred to them and the Appellees failed to set forth a claim for inverse condemnation or trespass. The trial court denied the Appellants' motions, but granted a certificate of immediate review. This appeal followed.

"We review the grant or denial of a motion to dismiss de novo, construing the pleadings in the light most favorable to the plaintiff[s] with any doubts resolved in the plaintiff[s'] favor."[6]

With this guiding principle in mind, we turn now to the Appellants' specific claim of error.

The Appellants argue that the trial court erred in denying their motions to dismiss because, under Georgia law, a contract that recognizes the continuing use of the easement to others for other purposes does not constitute an abandonment of that easement. We disagree.

[5] Because the Agreement was attached as an exhibit to the amended complaint, the trial court could consider it when ruling on a motion to dismiss. See *Gold Creek SL, LLC v. City of Dawsonville*, 290 Ga. App. 807, 809 (1) (660 SE2d 858) (2008) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and thus, a trial court is authorized to consider exhibits attached to and incorporated into the pleadings in its consideration of a motion to dismiss.").

[6] *Rogers v. Dupree*, __ Ga. App. __ (824 SE2d 823) (2019) (punctuation and citations omitted).

Generally, when "interpreting an express easement, the rules of contract construction apply."[7] Further, "[t]he cardinal rule of contract construction is to ascertain the intention of the parties. To this end[,] the whole instrument, together with its circumstances, must be considered. Absent ambiguity that cannot be resolved by applying the rules of contract construction, the [construction of a] contract remains a question of law."[8]

The question of whether the Agreement terminated the railroad-purpose easement or, as the Appellants argue, the Agreement "terminat[ed NSR's] rights to the easement [and] confirm[ed] that the rights formerly held by [NSR] would be preserved and transferred to the [ADA,]" is a question of contract construction, which requires a three-step process.[9] The three-step process is as follows:

> First, the trial court must decide whether the contract language is clear and unambiguous. If it is, the trial court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court

---

[7] *Pichulik v. Ball*, 270 Ga. App. 656, 660 (1) (607 SE2d 247) (2004) (punctuation and footnote omitted).

[8] Id. (punctuation and footnotes omitted).

[9] See *McKinley v. Coliseum Health Group*, 308 Ga. App. 768, 770 (1) (708 SE2d 682) (2011).

must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[10]

Here, the trial court summarily denied the Appellants' motions to dismiss. Thus, we cannot determine from the order whether the trial court did so because it found that the Agreement unambiguously stated that NSR abandoned its railroad-purpose easement or because it found the Agreement was ambiguous and created questions of material fact to be decided by a jury.[11]

With regard to the first step of the construction of a contract, the Appellants assert in their brief that the abandonment language in the Agreement merely refers to NSR's abandonment of its rights and obligations to provide rail service under federal regulatory laws, and not its abandonment of the actual easement. In support of this argument, the Appellants point to language in the Agreement stating that NSR "by execution hereof quitclaims, remises and releases unto ADA any right, title or interest (including, without limitation, any easement rights)" in the property.

---

[10] Id. (citation and punctuation omitted).

[11] Id.

This Court has held that "[a]n ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations."[12]

Construing the pleadings in the light most favorable to the Appellees, as the non-movant, the Agreement is ambiguous because the parties' intention cannot be definitively ascertained from the four corners of the document.[13] At present, it is uncertain what property rights were conveyed by the Agreement to ADA from NSR.

Thus, the trial court must proceed to step two and apply the rules of contract construction to resolve the ambiguity.[14] "Under the rules of contract construction, parol evidence is admissible to explain an ambiguity in a written contract, although such evidence is inadmissible to add to, take from, or vary the writing itself."[15]

---

[12] *Cruz v. Paredes*, 333 Ga. App. 857, 859 (2) (777 SE2d 702) (2015) (punctuation and footnote omitted).

[13] See *McKinley*, 308 Ga. App. at 770 (1).

[14] Id.

[15] Id. at 770-771 (1) (citation and punctuation omitted).

8

To resolve this issue, the trial court would be required to determine who owns fee-simple title to the property by examining all conveyance instruments and ascertaining whether the instruments conveyed fee-simple title or merely railroad-purpose easements.[16] In light of this uncertainty, the trial court did not err in denying the Appellants' motions to dismiss.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[16] See *Jackson v. Rogers*, 205 Ga. 581, 586-587 (54 SE2d 132) (1949) ("[T]he crucial test in determining whether a conveyance grants an easement in, or conveys title to, land, is the intention of the parties, but in arriving at the intention[,] many elements enter into the question. The whole deed or instrument must be looked to, and not merely disjointed parts of it. The recitals in the deed, the contract, the subject-matter, the object, purposes, and nature of the restrictions or limitations, if any, or the absence of such, and the attendant facts and circumstances of the parties at the time of the making of the conveyance are all to be considered.") (citations and punctuation omitted).